# Randolph's Appeal.

1. An original and cross bill are usually, but not necessarily, heard together.

2. When both causes are at issue, the plaintiff in the cross-suit may have an order that they be heard together.

3. A partner filed a bill against his fellow for an account, an answer was put in; before hearing, the defendant filed a cross-bill averring a settlement since filing the answer and praying the plaintiff might be compelled to perform it; the plaintiff put in an answer. *Held*, that the settlement being a preliminary question the court might order the cross-suit to be first heard.

4. There being no replication, it was not error to refuse to appoint an examiner.

5. When a cause is heard on bill and answer, it is to be determined by the facts alleged in the bill and not denied in the answer; the court cannot look beyond the pleadings.

October 19th 1870.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Court of Common Pleas of *Crawford county:* In Equity: Of October and November Term 1870, No. 180.

On the 11th of March 1867, Abishai F. Randolph filed a bill against Robert Randolph, alleging:—

1 and 2. That he and Robert, on the 1st of April 1866, entered into partnership, to carry on the business of a saw-mill and merchandise, for five years, the saw-mill and a farm to be the capital furnished by Robert, and Abishai to furnish $2000 in cash and goods; a house for Abishai's dwelling, with rooms for the store, to be erected at their joint expense, the building to be Robert's at the end of the five years; if dissolved sooner, parts of the real estate designated were to be taken by each at a valuation.

3. On the 1st of February 1867, Robert gave notice of dissolution, left the concern, but continued to carry on the business, and had improved the mill.

4. No settlement between the parties had been made; Abishai had sought a settlement, but Robert had declined.

The bill prayed for an account; that Robert might be restrained from collecting the partnership debts or disposing of the property; for the appointment of a receiver; and general relief.

On the same day a preliminary injunction was granted.

On the 16th of April, A. Power was appointed receiver.

On the 18th of April, Robert filed an answer, admitting the partnership and dissolution as set out in the bill; he averred that he and Abishai jointly took an inventory of the stock, and Abishai took possession of it and of the store, house and garden, and still held possession; that Abishai was carrying on the merchandise part of the business, had the books of the firm, and was collecting the accounts; that Robert had possession of the mill; that he was *not* collecting any of the accounts; that he was, and had

been, ready to account for all the firm property, and had so informed Abishai.

On the 24th of April J. W. Smith, Esq., was appointed commissioner to take testimony.

The docket-entries showed that the case was on the argument-list May 2d, and continued. On the 20th of November 1868, Robert filed a cross-bill against Abishai, in which he set out:—

1. The filing of Abishai's bill.

2. That on the 22d of April 1867, during the continuance of the cause, they entered into an agreement as follows:—

" It is agreed, by the undersigned, that all matters and accounts between us be fully and finally settled to this date, upon the following terms: Robert Randolph to pay Abishai the sum of $300, settle with the millwright man, pay half of the court costs in the equity case, release his claim of every kind to the goods in the grocery, and transfer his right of every kind in the books of the firm to said Abishai. Abishai agrees to leave the entire premises within ninety days, and if possibly convenient, in sixty days from this date, taking books, goods in grocery, lumber as now divided, and the sum of $300, now paid; the premises to be left in good order, and all'title thereto hereby released, Abishai discontinuing the equity case in court, and paying the other half of the court costs.

" April 23d 1867.          R. F. RANDOLPH, [L.S.]
                           A. F. RANDOLPH, [L.S.] "

3. That at signing the agreement, Robert paid the counsel of Abishai $300, for which a receipt was endorsed on the agreement, also half the costs of the suit, released his claim to the goods, transferred his right to the books, and complied in all things with the agreement; that Abishai had taken the firm books, the goods, the lumber as it was then divided, but refused to pay half the equity costs or discontinue the case.

The solicitors of Abishai accepted service of the bill November 25th 1868.

On the 10th of June 1869, Robert ruled Abishai to answer, demur or plead in thirty days.

Abishai filed an answer to the cross-bill (at what time does not appear from the record). The answer denied the allegations of the second paragraph of the bill as stated, and set out as the facts, that, after negotiations between the parties, " the defendant in the original bill, and the complainant in the cross-bill, at last said that he would accept a proposition that had been made by this respondent through Messrs. Pettis and Power, but that he would do nothing until he had seen his attorney; * * * he came to the office of Mr. Pettis, this respondent's attorney, in Meadville, and asked him to write a paper that would be proper for both to sign,

and Mr. Pettis complied with his request, the said complainant in the cross-bill taking such paper to his attorney, Mr. Brawley, afterwards returning with it, signed by him, handing it to Mr. Pettis, in the absence of your respondent, together with $300 in money, which he was to pay down to the respondent, then withdrawing to give Mr. Pettis an opportunity of seeing the complainant in the original bill, and obtained his signature, and pay over the money referred to; that Mr. Pettis afterwards found this respondent, presented the paper so signed by the complainant in this cross-bill, with instructions or a request that he sign it, which this respondent did, without even reading it or any portion of it, or hearing any part of it read, supposing that it had been prepared in pursuance of the proposition made and accepted through Messrs. Pettis and Power, and that having signed it, this respondent inquired of Mr. Pettis what time was fixed in the article for the payment of the amount due to this respondent from the complainant in this cross-bill upon the books of the company, and it appearing from an examination of the article that no time had been fixed, it became necessary for Mr. Pettis again to seek the complainant in order that the agreement should be perfect in that respect; that Mr. Pettis immediately called upon the said complainant, who refused to fix such time as well as to pay such amount; that these facts being communicated to this respondent by Mr. Pettis, this respondent flatly refused to take a dollar of the money, and never did, not even counting it, but directed his attorney, Mr. Pettis, to return the said sum of $300 to the defendant, and that Mr. Pettis went immediately to the defendant and offered him the identical money he had received from him, informing him that this respondent would not receive the money unless the whole of the proposed agreement could be carried out by him, the complainant, and that the said complainant refused to receive the money back, which is still subject to his order.

"3. In answer to the third paragraph in complainant's cross-bill of complaint, the respondent saith: That the receipt of Mr. Pettis, his attorney, referred to as being upon the back of the said agreement, was also written and signed in your respondent's absence, and that at the time when the complainant in this cross-bill of complaint signed his name to the proposed agreement this respondent was not present, nor was he at the time when Mr. Pettis signed such receipt upon the back of such agreement and took the money, nor had he ever seen or in any way directed the paper or agreement."

The docket-entries show that, "August 19th 1869," "September Term 1869," "November 25th 1869," "December 14th 1869," the case was on the argument-list.

The record did not show any further pleadings, nor did it show

[Randolph's Appeal.]

any return by the commissioner appointed to take testimony under the original bill.

In the opinion the court said :—

" The parties agree that the cross-bill should be first disposed of, and should be argued and determined upon bill and answer."

On the 16th of December 1869 the court " decreed that the prayer of the bill be granted, and the original bill by Abishai F. Randolph *v.* Robert Randolph be dismissed, and that the plaintiff therein pay half the costs made prior to the 23d of April 1867, and all the costs made since that date."

Abishai Randolph appealed, and assigned 16 errors.

The first 10 were to expressions in the opinion of the court.

11. Refusing to appoint a master.

12. In hearing and disposing of the cross-bill before considering the original bill.

13. In not considering the testimony taken by the commissioner before the cross-bill was filed.

14. In not treating the bill and cross-bill as one case.

15 and 16. In disposing of the case when not at issue and dismissing the original bill.

*S. N. Pettis* (with whom was *M. P. Davis*), for appellant, as to the 14th and 15th errors, cited Collyer *v.* Collyer, 2 Wright 257 ; Elderkin *v.* Fitch, 2 Ind. 90 ; White *v.* Buloin, 2 Paige 168 ; Reed *v.* Keemp, 16 Ill. 445 ; Rosevelt *v.* Dale, 2 Cowen 129. Equity will relieve from a contract made under a mistake : Jenks *v.* Fritz, 7 W. & S. 201 ; Hunt *v.* Freeman, 1 Ohio R. 490 ; Conwell *v.* Evill, 4 Blackf. 67 ; Linn *v.* Burkey, 7 Ind. 69. If from the *whole* record it appears the decree is erroneous, it will be reversed : Hays *v.* Thomas, Breese R. 137. The answer is to be taken as true : Derby *v.* Gage, 38 Ill. 27 ; Green *v.* Vardissan, 2 Blackf. 324 ; Jennison *v.* Graves, Id. 440 ; Badger *v.* Badger, 2 Cliff. 137. A compromise improperly obtained may be set aside in chancery : Spahr *v.* Hollinshead, 8 Blackf. 415 ; Young *v.* Losie, 2 Ind. 27.

*J. B. Brawley*, for appellee.—A cross-bill may be filed where new matter arises : Adams's Eq. 402 ; 3 Danl. Ch. Pr. 1743. An original and cross bill are usually, but not necessarily, heard together : Brightly's Eq., §§ 605, 606 ; 3 Danl. Ch. Pr. 1751 ; 2 Maddock's Ch. 429.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—The original bill in this case was filed, March 11th 1867, by the appellant praying for an account, a preliminary injunction and the appointment of a receiver, and the same day a preliminary injunction was granted ; and, on the 16th of April

[Randolph's Appeal.]

1867, a receiver was appointed. The answer of the appellee was filed on the 18th of April 1867, admitting the partnership and averring a willingness to account for all the partnership property which had come into his hands. On the 20th of November 1868, a cross-bill was filed by the appellee reciting the original bill and alleging that on the 22d of April 1867, during the continuance of the said cause, the parties entered into an agreement in writing, signed and sealed by them, and setting forth a copy thereof, by which it was agreed that all matters and accounts between them should be fully and finally settled to that date, and that the equity case should be discontinued by the appellant, upon the terms stipulated in said agreement and as therein provided; and averring that in all things he had complied with the requirements of said agreement, but that the complainant in said bill—the appellant—still refuses to discontinue the said equity case and to pay the one-half of the costs therein as agreed, but is proceeding in the said cause; and praying that the said bill be forthwith dismissed, and for such other and further relief as the nature and circumstances of the case may require. On the 16th of June 1869, a rule was taken on the appellant, the respondent in the cross-bill, to answer, demur or plead thereto within thirty days. The appellant's answer to the cross-bill, denying the facts to be as alleged by the complainant in regard to the said agreement, and giving a statement of the facts as he alleged them to be, is brought up with the record in this case; but it does not appear from the docket entries or any other part of the record when it was filed. The cause was placed in the argument list, August 19th 1869, and again at September Term 1869, November 25th and December 14th 1869. On the 16th of December 1869, the case was heard on the cross-bill and answer, and the court ordered and decreed that the prayer of the bill be granted, and that the original bill be dismissed, and that the plaintiff therein pay half of the costs, &c. The appellant has assigned sixteen errors for the reversal of the decree in this case—ten of which relate to the opinion of the court—five to the course of proceedings, and one to the decree. We shall not attempt to notice all the assignments, and it will not be necessary in order to dispose of the questions which properly arise in the case. The record comes before us in a very unsatisfactory shape. It is in several respects defective, and the proceedings seem to have been conducted with but little regard to the established rules and practice in equity. There was no decree for an account, though the answer admitted the appellant's right to an account—but a commissioner was appointed to take testimony. The cause was placed on the argument list at different times, as the docket entries show, but it does not appear whether it was set down to be heard on the original bill and answer, or whether on the cross-bill and answer, or on both. The learned

judge, before whom the case was heard, says, in his written opinion brought up with the record, that the parties agreed that the cross-bill should be first disposed of, and should be argued and determined on bill and answer. This is denied by the appellant's counsel and assigned for error. The record does not show any agreement of the parties, or of their counsel, that the case should be heard on the cross-bill and answer, and the only evidence of such an agreement is the statement of the fact in the opinion of the court. But as no application was made to the court for the correction of the error, if such it was, we must take the fact to be as stated, and treat the case as having been set down to be heard on bill and answer by the agreement of the parties. The original cause and cross-cause are usually, though not necessarily, heard together. This rule applies where both causes are at issue, and in a situation to be heard, and the plaintiff in the cross-suit may have an order that they be heard together: 3 Danl. Ch. Pr. 1851. But no harm was done the appellant in this case by hearing the cross-cause first, even if it was heard, as he alleges, without his consent. The cross-bill was filed to enable the appellee to take advantage of the settlement, which he alleges was made by the parties, subsequent to his answer. Whether, therefore, the parties made the alleged settlement was a preliminary question which it was proper for the court to dispose of before proceeding to hear the original cause.

There is nothing on the record to show that the court refused to appoint a master to take testimony, and report the facts in the cross-cause, on motion of the appellant's counsel, as alleged; and if the court did so refuse, it was not error. There was no replication to the answer, and no issue which made the appointment of a master to take testimony necessary or proper.

Nor was there any error in disregarding and not considering the testimony taken by the commissioner in the original cause touching the subject of the cross-bill, if the case was set down to be heard on the cross-bill and answer. Where a cause is heard on bill and answer, the rights of the parties must be determined by the facts alleged in the bill, and admitted or not denied in the answer, and the court cannot look beyond the pleadings in order to determine the rights of the parties.

We now come to the main question in the case: Did the appellant admit in his answer to the cross-bill that the parties had made an agreement for the full and final settlement of all matters and accounts between them as alleged by the appellee? If he did, then the irregularities of which he complains did him no harm, and the decree of the court must be affirmed. What then are the facts in relation to the alleged agreement as averred or admitted in the answer? The appellant admits that he signed the paper. But taking the facts to be as averred in the answer, did he so

execute it as to make it a valid and binding agreement? The negotiations for the settlement were not conducted by the parties themselves, or in the presence of each other. When the terms upon which the settlement was to be made by the parties had been arranged, as was supposed, the agreement was drawn up by Mr. Pettis, the appellant's counsel, at the request of the appellee. After consulting his counsel, the appellee signed the paper and handed it to Mr. Pettis, together with the money which he was to pay by the terms of the agreement. Mr. Pettis then took the paper to the appellant and requested him to sign it, which he did, as he avers, without even reading it or any portion of it, or hearing any part of it read, supposing it had been prepared in persuance of the proposition made and accepted through Messrs. Pettis and Power. Having signed it, he inquired of Mr. Pettis what time was fixed for the payment of the amount due him from the appellee on the books of the company. It appearing from an examination of the article that no time had been fixed, Mr. Pettis immediately called upon the appellee for the purpose of having the agreement made perfect in this respect, who refused to fix the time as well as to pay the amount. These facts being communicated to the appellant, he flatly refused, as he says, to take 'a dollar of the money, and never did, not even counting it, but directed Mr. Pettis to return it to the appellee; and he avers that Mr. Pettis went immediately to him and offered him the identical money he had received from him, informing him that the appellant would not receive the money unless the whole of the proposed agreement could be carried out by him; and the money is still subject to his order.

It is clear, if the facts are as alleged in the answer, that the agreement was not executed by the appellant. It was signed by mistake, and before it was delivered by Mr. Pettis the mistake was discovered, and the appellant refused to receive the money and consummate the agreement. The delivery of the paper to Mr. Pettis was not in execution of the agreement, but in order that it might be executed by the appellee in accordance with the terms of the proposed arrangement as understood by the appellant. If a party who has signed and delivered a paper by mistake is not bound by it, much less is one who discovers the mistake after he has signed, and before he has delivered the paper, and who refuses to consummate the agreement because of the mistake. It cannot be pretended if the appellant, after signing the paper, had refused to deliver it, and accept the money because of the discovery of the alleged mistake, that he would be bound by it. Why then should he be bound by the delivery of the paper to Mr. Pettis in order to have the mistake corrected? The court was clearly in error in deciding upon the facts stated in the answer that the written contract of settlement was entirely con-

[Randolph's Appeal.]

summated before the alleged mistake was discovered. And even if it had been, why should the appellant be precluded in equity from setting up the mistake in avoidance of the alleged agreement? If then the agreement, though signed, was not consummated by the appellant, as we have seen, it was not binding upon him in law. If it was executed by mistake it was not binding in equity. And the court erred in dismissing the appellant's bill on the ground that the alleged agreement was admitted in his answer. The decree must therefore be reversed, and the cause sent back to be proceeded in according to equity.

DECREE.—This cause came on for hearing on an appeal from the decree of the Court of Common Pleas of Crawford county dismissing the appellant's bill, and was argued by counsel; and now, after due deliberation had thereon, it was ordered and decreed that the said decree of the Common Pleas be reversed, and that the cause be remitted to the said court to be further proceeded in according to the course of equity practice.